UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ABCNY, INC.,

                         Plaintiff,              Case No.:  23-cv-9094 (JMF)

              -against-                  **AMENDED COMPLAINT**

AXIS SURPLUS INSURANCE COMPANY,
LANDMARK AMERICAN INSURANCE COMPANY,
and STARSTONE SPECIALTY INSURANCE
COMPANY,

                        Defendants.
----------------------------------------------------------------X

       Plaintiff ABCNY, INC., by its attorneys, **AGULNICK KREMIN P.C.,** for it's Amended Complaint against Defendants AXIS SURPLUS INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY and STARSTONE SPECIALTY INSURANCE COMPANY alleges as follows:

## <u>THE PARTIES</u>

       1.     That at all times hereinafter mentioned, Plaintiff ABCNY, INC., (hereinafter referred to as "Plaintiff") is a domestic business limited liability corporation organized under the laws of the State of New York with its principal place of business located at 535 Van Buren Street, in the County of New York, City and State of New York.

       2.     That at all times hereinafter mentioned, upon information and belief, Defendant AXIS SURPLUS INSURANCE COMPANY (hereinafter referred to as "AXIS"), is a foreign corporation duly formed under the laws of the State of Illinois with its principal offices located at 233 South Wacker Drive, Suite 3510, Chicago, IL.

3.      Defendant AXIS, its subsidiary, and/or agent is an insurance company licensed, admitted, doing business and engaging in, and/or authorized to engage in the business of liability and casualty insurance in the State of New York, with offices for the transaction of business located within the State of New York.

4.      That at all times hereinafter mentioned, upon information and belief, Defendant LANDMARK AMERICAN INSURANCE COMPANY (hereinafter referred to as "LANDMARK"), is a foreign corporation duly formed under the laws of the State of Georgia, with its principal offices located at 945 East Paces Ferry Road, Suite 1800, Atlanta, GA 30326-1160.

5.      Defendant LANDMARK, its subsidiary, and/or agent is an insurance company licensed, admitted, doing business and engaging in, and/or authorized to engage in the business of liability and casualty insurance in the State of New York, with offices for the transaction of business located within the State of New York.

6.      That at all times hereinafter mentioned, upon information and belief, Defendant STARSTONE SPECIALTY INSURANCE COMPANY (hereinafter referred to as "STARSTONE"), is a foreign corporation duly formed under the laws of the State of New Jersey with its principal offices located at 185 Hudson Street, Suite 2600 Jersey City, NJ 07311.

7.      Defendant STARSTONE, its subsidiary, and/or agent is an insurance company licensed, admitted, doing business and engaging in, and/or authorized to engage in the business of liability and casualty insurance in the State of New York, with offices for the transaction of business located within the State of New York.  (AXIS, LANDMARK, and STARSTONE shall collectively be referred to as "Insurance Company Defendants")

8.      Plaintiff brings this action against the Insurance Company Defendants with regard to the Insurance Company Defendants' bad faith failure to indemnify Plaintiff for its insurance claim following a casualty loss/fire at Plaintiff's property at 535 Van Buren Street, New York, New York (hereinafter referred to as the "Property") on or about January 7, 2023 (hereinafter referred to as the "Loss"), the facts and circumstances being more fully set forth below.

## BACKGROUND

9.      At all times hereinafter alleged, Plaintiff owns and has an insurable interest in the hotel and real property known as Hotel Artel 535, located at 535 Van Buren Street, New York, New York in the County of New York (the "Hotel"), in addition to the business interests of the Plaintiff.

10.     That each of the Insurance Company Defendants have participated in the insuring the Property and Plaintiff's business, with each agreeing to insure a portion of the risk as set forth in their respective policies.

11.     That Defendant AXIS, its subsidiary, and/or agent, for good and valuable consideration and a premium paid, issued and/or reissued to Plaintiff an insurance policy, including endorsements and amendments thereto which became a part of said policy, bearing the policy number EAF657417-22 (hereinafter referred to as the "Axis Policy"), which was in effect on the date of Loss, whereby it insured the Property and certain contents therein against all risks of loss up to the limits contained therein, including, *inter alia*, damage resulting fire, pursuant to the terms and conditions in the Axis Policy.  The Axis Policy was signed by the authorized agents of AXIS, its subsidiary, and/or agent.

12.     Pursuant to the Axis Policy, Defendant AXIS, its subsidiary, and or agent agreed to insure the Plaintiff for a term of twelve (12) months, and in effect on the date of the Loss, against

loss of caused by, *inter alia,* damage resulting from fire, pursuant to the terms and conditions in the Axis Policy.

13.    That Defendant LANDMARK, its subsidiary, and/or agent, for good and valuable consideration and a premium paid, issued and/or reissued to Plaintiff an insurance policy, including endorsements and amendments thereto which became a part of said policy, bearing the policy number LHD927883 (hereinafter referred to as the "Landmark Policy"), which was in effect on the date of Loss, whereby it insured the Property and certain contents therein against all risks of loss up to the limits contained therein, including, *inter alia*, damage resulting fire, pursuant to the terms and conditions in the Landmark Policy.  The Landmark Policy was signed by the authorized agents of LANDMARK, its subsidiary, and/or agent.

14.    Pursuant to the Landmark Policy, Defendant LANDMARK, its subsidiary, and or agent agreed to insure the Plaintiff for a term of twelve (12) months, and in effect on the date of the Loss, against loss of caused by, *inter alia,* damage resulting from fire, pursuant to the terms and conditions in the Landmark Policy.

15.    That Defendant STARSTONE, its subsidiary, and/or agent, for good and valuable consideration and a premium paid, issued and/or reissued to Plaintiff an insurance policy, including endorsements and amendments thereto which became a part of said policy, bearing the policy number H82404221CSP (hereinafter referred to as the "Starstone Policy"), which was in effect on the date of Loss, whereby it insured the Property and certain contents therein against all risks of loss up to the limits contained therein, including, *inter alia*, damage resulting fire, pursuant to the terms and conditions in the Starstone Policy.  The Starstone Policy was signed by the authorized agents of STARSTONE, its subsidiary, and/or agent.

16.    Pursuant to the Starstone Policy, Defendant STARSTONE, its subsidiary, and or agent agreed to insure the Plaintiff for a term of twelve (12) months, and in effect on the date of the Loss, against loss of caused by, *inter alia,* damage resulting from fire, pursuant to the terms and conditions in the Starstone Policy.   The Axis Policy, Landmark Policy, and the Starstone Policy shall collectively be referring to as the "Participating Policies".

17.    Plaintiff operated the Hotel to provide temporary housing and amenities to guests. As a hotel operator, and is is standard in the hotel industry, Plaintiff contemplated that, from time to time, blocks of hotel rooms would be reserved at an agreed-to rate and paid for by the event host who reserved the hotel rooms for their guests at the Hotel.

18.    On or about January 3, 2023, Plaintiff, through Artel 35, LLC, entered into a Commercial Hotel Agreement (the "Hotel Agreement") with the New York City Department of Homeless Services ("DHS") and the HANYC Foundation, Inc ("HANYC").

19.    Pursuant to the Hotel Agreement, Plaintiff agreed to rent hotel rooms at a set rate to provide lodging and personal services for guests who were seeking asylum in New York City..

20.    Under the Hotel Agreement, Plaintiff agreed, among other things, to provide preferential volume pricing of $130 per day, per room, on a block of 147 hotel rooms in exchange for guaranteed payment from DHS for the block of hotel rooms that it reserved.

21.    The services Plaintiff was providing under the Hotel Agreement were nearly identical to the Services provided to all patrons of the Hotel.

22.    More specifically, pursuant to the Hotel Agreement, Plaintiff was required to provide housekeeping services for all rooms in the hotel block, linen and toiletry services, refuse and trash pickup from each of the hotel rooms,

23.    The Hotel Agreement also explicitly acknowledges that the Hotel was not licensed as a homeless shelter.   Section II.2. of the hotel agreement explicitly states that "the City acknowledges that the hotel and property is not licensed for use as a homeless shelter o[r] anything else other than use as a hotel."

24.    At all times relevant, Plaintiff did not apply for any license, permit, or any other approval required to operate as a homeless shelter.

25.    At all times relevant, Plaintiff did not consider the Hotel as a homeless shelter, and was not advised by DHS, HACNY, any of the Defendants, or anyone else that the Hotel was considered or deemed a homeless shelter.

26.    Similarly, at all times relevant, Plaintiff was not advised that any license, permit, or other approval was required for Plaintiff to rent the block of hotel rooms to DHS and HACNY under the Hotel Agreement.  Likewise, at all times relevant, Plaintiff was not advised that DHS, HACNY, or anyone else applied for any license, permit, or other approval to enable the hotel to be utilized as a shelter.

27.    At all times relevant, upon information and belief, Plaintiff maintained all necessary permits, licenses, and approvals to operate as a hotel.

28.    At all times relevant, Plaintiff was renting the block of hotel rooms to the DHS and HACNY in the ordinary course of its business as a hotel operator.

29.    t, as set forth above, on or about January 7, 2023, a fire occurred at the Property, resulting in both physical and economic damages and losses.

30.    The Insurance Company Defendants, their subsidiaries, and/or agents, were each notified of the subject Loss as soon thereafter as was practical.

31.    At all times mentioned, the Plaintiff has not obtained any other insurance upon the described property other than the Participating Policies.

32.    Plaintiff has submitted to the Insurance Company Defendants' requests for a complete examination of all the facts and circumstances surrounding the loss.

33.    That following the Loss being submitted, the Insurance Company Defendants undertook to adjust the Loss, with the claim being assigned claim numbers as follows:

ATL 201987 – AXIS Surplus Insurance Co.
H82404221CSP – StarStone Specialty Insurance Co.
7030177752 – Landmark American Insurance Co.

34.    That the Insurance Company Defendants have each failed and refused to indemnify Plaintiff pursuant to the terms of the Participating Policies.

35.    That in bad faith, the Insurance Company Defendants have, in breach of the Participating Policies, insisted upon the application of a two hundred fifty thousand dollar ($250,000.00) deductible, relying upon the following "Shelter Deductible":

| TYPE OF DEDUCTIBLE | DEDUCTIBLE |
|---|---|
| AOP Deductible for Artel Location & BYLYN House | $250,000 |
| The $250,000 AOP Deductible applies to any locations that is or becomes a shelter during the term. | |

36.    That at the time of the Loss, the Property was not being operated as a "shelter" and was operating as a hotel.

37.    That the term "shelter" is undefined in the Participating Policies.

38.    That the term "hotel" is undefined in the Participating Policies.

39.     That at the time of the Loss, the guests at the hotel received the usual and customary accommodations and amenities that a typical hotel would provide, including full staffing, private accommodations, regular housekeeping services, linens, toiletries, and trash collection, in exchange for a nightly fee.

40.     That although the Insurance Company Defendants each had ample opportunity and expertise to each draft a policy with the term "hotel" and "shelter" defined, the Insurance Company Defendants chose not to do so, the result of which is differing interpretations.

41.     That the Plaintiff's interpretation of the term hotel is consistent with the usage of the Property at the time of the Loss, and that interpretation is both reasonable and consistent with the reasonable expectation of the Plaintiff.  Indeed, since Plaintiff, DHS, and HACNY all signed a document acknowledging that the Hotel did not have the requisite license for use as a homeless shelter or for use as anything else other than use as a hotel, and upon information and belief, at all times relevant no such license or permit was procured by Plaintiff or anyone else to operate as something other than a hotel, Plaintiff's belief that it was not operating a shelter was objectively reasonable since none of the insurers drafted their policy to specify when a hotel would be considered a "shelter."

42.     That the Plaintiff's interpretation of the term hotel is consistent with the usage of the Property at the time of the Loss, and that interpretation is both reasonable and consistent with the reasonable expectation of the Plaintiff.

43.     That the contract with the City of New York relevant to the usage of the Property clearly indicates "hotel", and those accommodations, amenities, and services provided by the

Plaintiff to its guests are no substantively different than the services provided to any other guest at the hotel.

44.    That, to the extent that the Insurance Company Defendants dispute the interpretation of the Policy as gleaned from a simple reading of the Participating Policies as it pertains to the "Shelter Deductible", or claims an alternative interpretation applies, then the Participating Policies are ambiguous as written and must be interpretated in the light most favorable to the insured by virtue of the doctrine of *contra preferentem.*

45.    That the Insurance Company Defendants have denied and refused to consider in good faith any other reasonable interpretation of the Shelter Deductible as it applies to these facts, without any regard for the fact that the Insurance Company Defendants drafted the Participating Policies, and despite acknowledging that both terms are undefined in the Participating Policies.

46.    By reason of the Insurance Company Defendants' contractual undertaking to Plaintiff pursuant to the Participating Polices to properly evaluate and pay claims thereunder to the extent of Plaintiff's loss up to the limits prescribed by the Participating Policies, the Insurance Company Defendants owed and continues to owe Plaintiff the duties of good faith and fair dealing in connection with the parties' contractual relationship.

47.    In accordance with the aforesaid duties of good faith and fair dealing, the Insurance Company Defendants, and their agents, were and are prohibited from undertaking any act which would have the effect of injuring or destroying Plaintiff's rights deriving from their contractual relationship with the Insurance Company Defendants under the Participating Policies.

48.    By failing to pay Plaintiff under the Participating Policies to the full extent of Plaintiff's loss up to the limits of the Participating Policies, despite the text of the Participating Policies, legal precedent, statutory authority, and/or contractual obligations, the Insurance Company Defendants acted in bad faith and breached the duties of good faith and fair dealing owed to Plaintiff.

49.    The Insurance Company Defendants' actions toward Plaintiff are part of a pattern and practice by Insurance Company Defendants with regard to self-serving application of deductibles based upon vague, ambiguous, and intentionally undefined terms which contain material ambiguities, and subsequent position, under its latest interpretation, there is more limited coverage, effectively denying or hindering the processing of legitimate claims.

50.    The Insurance Company Defendants violated the aforesaid Insurance Law and the fundamental principles governing claims handling, forcing the Plaintiff to file suit herein simply to obtain a proper adjustment and proper interpretation of the Participating Policies.

51.    That upon information and belief, Insurance Company's actions toward Plaintiff, including with regard to haphazard application of the Shelter Deductible,  are part of a pattern and practice by the Insurance Company Defendants to sell insurance policies to property owners and then subsequently take a position, or apply an incorrect interpretation, wherever the opportunity arises, to minimize coverage or deny coverage in its entirety, treating their own insureds like fiscal enemies.

52.    The Insurance Company Defendants' outrageous actions demonstrate that degree of bad faith evincing a disingenuous, dishonest failure to carry out a contractual obligation.

## AND AS FOR A FIRST CAUSE OF ACTION
## BREACH OF CONTRACT AS AGAINST AXIS SURPLUS INSURANCE COMPANY

53.     Plaintiff repeats and re-alleges all allegations in the Verified Complaint as if more completely and fully set forth herein.

54.     By failing to pay Plaintiff under the Axis Policy to the full extent of Plaintiff's covered loss up to the limits of the Axis Policy, along with the other Insurance Company Defendants under the Participating Policies, including but not limited to the conduct as set forth above, AXIS breached its obligation under the Axis Policy to properly adjust, settle, and pay the claim with regard to the loss at the Property and by application of the "Shelter Deductible".

55.     As a result of AXIS's breach, Plaintiff has been damaged in an amount to be determined at the time of trial but believed to be in excess of two hundred fifty thousand dollars ($250,000.00).

56.     As a further consequence of AXIS's bad faith, and pursuant to the Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York line of cases, Plaintiff has sustained consequential damages in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00).

57.     That the consequential damages resulting from an insurer's failure to provide and complete coverage were foreseen or should been foreseen contract was made and was contemplated by the parties.

58.     That it was at all times reasonable for Plaintiff to contemplate and assume that when the Participating Policies were issued, the Insurance Company Defendants were aware of the consequences and additional damages which would result if the coverage afforded to the Plaintiff was denied or underpaid, in bad faith.

11

59.     That here, where the Insurance Company Defendants denied, minimized, and underpaid the claim for the Loss, AXIS assumed consciously the risk that Plaintiff would then sustain even more damages as a consequence of the denial, minimalization, and underpayment for a Loss.

60.     That the consequential damages accrued from the Insurance Company Defendants' conduct as set forth in the Complaint, and which will accrue, include the inability to make repairs, opportunity costs, the need to procure alternative funds at the expense of Plaintiff, continued lost income, and other damages.

<u>**AND AS FOR A SECOND CAUSE OF ACTION**</u>
<u>**BREACH OF CONTRACT AS AGAINST LANDMARK AMERICAN INSURANCE**</u>
<u>**COMPANY**</u>

61.     Plaintiff rep1eats and re-alleges all allegations in the Verified Complaint as if more completely and fully set forth herein.

62.     By failing to pay Plaintiff under the Landmark Policy to the full extent of Plaintiff's covered loss up to the limits of the Landmark Policy along with the other Insurance Company Defendants under the Participating Policies, including but not limited to the conduct as set forth above, LANDMARK breached its obligation under the Landmark Policy to properly adjust, settle, and pay the claim with regard to the loss at the Property and by application of the "Shelter Deductible".

63.     As a result of LANDMARK's breach, Plaintiff has been damaged in an amount to be determined at the time of trial but believed to be in excess of two hundred fifty thousand dollars ($250,000.00).

64.     As a further consequence of LANDMARK's bad faith, and pursuant to the <u>Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York</u> line of cases, Plaintiff has

sustained consequential damages in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00).

65.     That the consequential damages resulting from an insurer's failure to provide and complete coverage were foreseen or should been foreseen contract was made and was contemplated by the parties.

66.     That it was at all times reasonable for Plaintiff to contemplate and assume that when the Participating Policies were issued, the Insurance Company Defendants were aware of the consequences and additional damages which would result if the coverage afforded to the Plaintiff was denied or underpaid, in bad faith.

67.     That here, where the Insurance Company Defendants denied, minimized, and underpaid the claim for the Loss, LANDMARK assumed consciously the risk that Plaintiff would then sustain even more damages as a consequence of the denial, minimalization, and underpayment for a Loss.

68.     That the consequential damages accrue from the Insurance Company Defendants' conduct as set forth in the Complaint, and which will accrue, include the inability to make repairs, opportunity costs, the need to procure alternative funds at the expense of Plaintiff, continued lost income, and other damages.

## AND AS FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT AS AGAINST STARSTONE SPECIALTY INSURANCE COMPANY

69.     Plaintiff repeats and re-alleges all allegations in the Verified Complaint as if more completely and fully set forth herein.

70.     By failing to pay Plaintiff under the Starstone Policy to the full extent of Plaintiff's covered loss up to the limits of the StarStone Policy along with the other Insurance Company

Defendants under the Participating Policies, including but not limited to the conduct as set forth above, STARSTONE breached its obligation under the Policy to properly adjust, settle, and pay the claim with regard to the loss at the Property and by application of the "Shelter Deductible".

71.    As a result of STARSTONE's breach, Plaintiff has been damaged in an amount to be determined at the time of trial but believed to be in excess of two hundred fifty thousand dollars ($250,000.00).

72.    As a further consequence of STARSTONE's bad faith, and pursuant to the Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York line of cases, Plaintiff has sustained consequential damages in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00).

73.    That the consequential damages resulting from an insurer's failure to provide and complete coverage were foreseen or should been foreseen contract was made and was contemplated by the parties.

74.    That it was at all times reasonable for Plaintiff to contemplate and assume that when the Participating Policy were issued, the Insurance Company Defendants were aware of the consequences and additional damages which would result if the coverage afforded to the Plaintiff was denied or underpaid, in bad faith.

75.    That here, where the Insurance Company Defendants denied, minimized, and underpaid the claim for the Loss, STARSTONE assumed consciously the risk that Plaintiff would then sustain even more damages as a consequence of the denial, minimalization, and underpayment for a Loss.

76.    That the consequential damages accrue from the Insurance Company Defendants' conduct as set forth in the Complaint, and which will accrue, include the inability to make repairs,

opportunity costs, the need to procure alternative funds at the expense of Plaintiff, continued lost income, and other damages.

**WHEREFORE**, Plaintiff ABCNY, INC. demands judgment against AXIS SURPLUS INSURANCE COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, and STARSTONE SPECIALTY INSURANCE COMPANY as follows:

A.      Under the FIRST Cause of Action, as against Defendant AXIS SURPLUS INSURANCE COMPANY damages in an amount to be determined at trial but believed to be in excess of two hundred fifty thousand dollars thousand dollars ($250,000.00), plus consequential damages, pursuant to the Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York line of cases, in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00);

B.      Under the SECOND Cause of Action, as against Defendant LANDMARK AMERICAN INSURANCE COMPANY damages in an amount to be determined at trial but believed to be in excess of two hundred fifty thousand dollars thousand dollars ($250,000.00), plus consequential damages, pursuant to the Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York line of cases, in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00);

C.      Under the THIRD Cause of Action, as against Defendant STARSTONE SPECIALTY INSURANCE COMPANY damages in an amount to be determined at trial but believed to be in excess of two hundred fifty thousand dollars thousand dollars ($250,000.00), plus consequential damages, pursuant to the Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York line of cases, in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00);

D.    Appropriate interest, the costs and disbursements of this action, and such other

and further relief as the Court deems just and proper.

E.    PLAINTIFF DEMANDS JURY TRIAL ON ALL ISSUED.

Dated:    Melville, New York
December 8, 2023

**AGULNICK KREMIN, P.C.**

By:_____

Scott E. Agulnick, Esq.
Todd D. Kremin, Esq.
*Attorneys for Plaintiff*
**ABCNY, INC.**
510 Broadhollow Road, Suite 303
Melville, New York 11747
Tel.: (718) 352- 4800
Fax: (718) 732- 2110